IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

Plaintiff,

REPORT AND
RECOMMENDATION

v.

07-cr-163-bbc

JARRETT JAMES,

Defendant.

---

## REPORT

The grand jury originally charged defendant Jarrett James with two armed bank robberies, possession of crack cocaine with intent to distribute it, and three § 924(c) counts. The drugs and a gun were found in a small, portable safe that police removed from James's mother's house without a warrant, although they obtained a warrant before opening the safe. James has moved to suppress evidence found in the safe, contending that the police needed a warrant to take it from his mother's house.[1] The government disagrees. The government is correct and I am recommending that this court deny the motion to suppress.

## FACTS

On May 14, 2008, this court held an evidentiary hearing. Having read the relevant documents and having heard and seen the witnesses testify, I find the following facts:

On March 16, 2006, a lone gunman robbed Bank Mutual in Middleton. About a month later, on April 14, 2006, a lone gunman robbed the same bank. For reasons outlined in

---

[1] Post indictment the government learned that the substance charged as crack cocaine was powder cocaine, so it withdrew the drug count and the associated § 924(c) count, intending to re-indict later with a more accurate drug charge. This does not moot the instant motion because the firearm found in the safe is evidence of the alleged armed bank robberies and associated gun counts.

thesearch warrant affidavit (attached), Middleton police developed defendant Jason James as a suspect in both bank robberies.

On May 14, 2006, authorities in Nebraska arrested and detained James on unrelated charges. James still was jailed in Nebraska on October 24, 2006, when Detective Darrin Zimmerman of the Middleton Police Department interviewed James's mother, Linda Martin. Martin reported that prior to his arrest James had been living with her and had told her that he was keeping a gun in her house. Martin directed James to get rid of it; apparently she believed that he had done so.

But on October 30, 2006, Martin called Detective Zimmerman and left word that she had received a letter from James in which he reported that he had left a gun in a small safe in Martin's house. Martin wanted the police to come and take the gun. The next day Martin hired attorney Terry Frederick to represent her during further interaction with the police. Attorney Frederick telephoned Detective Zimmerman, who confirmed that he would like to retrieve James's safe. Attorney Frederick agreed and they arranged for a November 2 meeting.

On November 2, 2006, Detective Zimmerman and a colleague met with Martin and Attorney Frederick at Martin's home. Martin led the police to James's safe and provided its combination. The police announced that they intended to take custody of the safe to preserve its contents until they could obtain a search warrant authorizing them to open it. Martin and Frederick agreed. The police took the safe, obtained a state court search warrant, opened the safe, and discovered cocaine and a firearm. (If Martin had not agreed to let the police take the safe, Detective Zimmerman would have seized the safe anyway and held it until he could apply for a warrant).

2

## ANALYSIS

James challenges the police removing his safe from his mother's residence without first obtaining a warrant. James argues that because of this unlawful removal, this court must suppress evidence recovered from the safe during execution of the subsequently-issued search warrant. As the government observes, however, this argument conflates James's possessory in the safe itself with his privacy interest in its contents. *See United States v. Ward*, 144 F.3d 1024, 1031 (7th Cir. 1998). A seizure, which affects a suspect's possessory interests, is less closely scrutinized by courts than a search, which affects a suspect's privacy interests. *See Segura v. United States*, 468 U.S. 796, 806 (1984). Indeed, because James was not present to assert an immediate possessory interest over the safe, it is not clear that removal of his safe from Martin's home even constitutes interference with that interest. *See Ward*, 144 F.3d at 1031.

In any event, James's mother indisputably had the right to allow the police to enter her home to search for evidence, *see United States v. Bell*, 500 F.3d 609, 612 (7th Cir. 2007). Police are allowed to secure a container on the basis of probable cause in order to prevent the destruction or removal of evidence while a search warrant is being sought for the container. *Segura.*, 468 U.S. at 810.[2]  Martin already had reported James's confession that the safe contained a handgun. This, coupled with other facts reported by Detective Zimmerman in his subsequent search warrant affidavit, demonstrate that Zimmerman had probable cause to believe that he would find contraband in the safe. The state court issued the warrant, the police opened the safe and they recovered the contraband that James now seeks to suppress.

---

[2]  Probable cause exists when, given all the circumstances known to the police, there is a fair probability that evidence of a crime will be found in a particular place. *United States v. Newsom*, 402 F.3d 780, 782 (7th Cir. 2005).

The police did nothing unreasonable with James's safe that would justify suppression of the evidence found in it during their execution of the subsequently-issued search warrant. There is no need to resort to the inevitable discovery doctrine offered by the government as a safety net, *see United States v. Blackwell*, 416 F.3d 631, 633 (7th Cir. 2005), but I note for completeness's sake that the government is correct: if Martin had not consented to removal of the safe, the police had probable cause justifying its seizure pending issuance of a warrant to open and search it.

RECOMMENDATION

Pursuant to 28 U.S.C. §636(b)(1)(B) and for the reasons stated above, I recommend that this court deny defendant Jarrett James's motion to suppress evidence.

Entered this 30th day of May, 2008.

BY THE COURT:

STEPHEN L. CROCKER
Magistrate Judge

CIRCUIT COURT
2006 NOV -6 PM 2: 54
DANE COUNTY, WI

### SEARCH WARRANT

STATE OF WISCONSIN )
)  ss.    In the Circuit Court of the
COUNTY OF DANE )    County of Dane.

THE STATE OF WISCONSIN, to the Sheriff, or any other peace officer for said County:

WHEREAS, Detective Darrin J. Zimmerman, had this day complained in writing to this Court of the County of Dane, upon oath, that on November 3, 2006, in the County of Dane, that there are now located and concealed in and upon certain property and contents unknown within said property, in the City of Middleton, in said Dane County, Wisconsin, and more particularly described as follows:

Middleton Police Property Tag Number 21751. 21751 consists of one metal Sentry brand safe, black in color, measuring approximately 16 inches long by 16 inches in width and 17 inches deep. On the front of the safe the brand "SentrySafe" is printed horizontally in the upper right hand corner. The front door is metallic in color while the rest of the safe is black in color. The touch pad access panel is on the front door and is grey in color with the numbers 0 through 9. There is a black lever located on the front of the door near the touch pad access panel as well. In the lower right hand corner of the door there is a white sticker affixed to the safe with the letter/number combination of MSW3517 AS719662. The safe had been seized for evidentiary purposes on November 2, 2006 during the course of a armed bank robbery investigation and during the

evidence packaging process was affixed with Middleton Police Property Tag number 21751.

certain things, to-wit:

Any and all firearms, U.S. currency, gambling/betting records. Also, documents tending to identify the occupant in control of said premises, including but not limited to, utility bills, rent receipts, personal correspondence, photographs, keys, and telephone bills.

which things may constitute evidence of crimes, to-wit: Armed Robbery, committed in violation of Section(s) 943.32(2) of the Wisconsin Statutes and Felon in Possession of a Firearm, committed in violation of Section(s) 941.29(2) of the Wisconsin Statutes; and prayed that a Search Warrant be issued to search said premises or property within for the property aforesaid

NOW, THEREFORE, in the name of the State of Wisconsin, you are commanded forthwith to search the said premises and persons unknown within said premises for the property aforesaid, and return this Warrant within forty-eight hours, before the said Court.

WITNESS, the Honorable _JOHN C ALBERT_, Judge of Circuit Court, Branch _3_, Dane County, Wisconsin, this _3_ day of _November_, 20 _06_

_____
Judge

**ENDORSEMENT**

Received by me this _3d_ day of _Nov_, 20 _06_ at _3 05_, o'clock _P_.M.

_____
(Sheriff)   (Peace Officer)

**COMPLAINT FOR SEARCH WARRANT**    CIRCUIT COURT

2006 NOV -6  PM 2: 54

STATE OF WISCONSIN    )
                      )  ss.    In the Circuit Court of the DANE COUNTY, WI
COUNTY OF DANE        )            County of Dane.

Detective Darrin J. Zimmerman, being duly sworn, on oath complains to the said Court of the County of Dane, that on November 3, 2006, in the County of Dane, that there are now located and concealed in and upon certain premises and property, unknown within said premises or property, in the City of Middleton in said Dane County, Wisconsin, and more particularly described as follows:

Middleton Police Property Tag Number 21751.  21751 consists of one metal Sentry brand safe, black in color, measuring approximately 16 inches long by 16 inches in width and 17 inches deep.  On the front of the safe the brand "SentrySafe" is printed horizontally in the upper right hand corner.  The front door is metallic in color while the rest of the safe is black in color. The touch pad access panel is on the front door and is grey in color with the numbers 0 through 9.  There is a black lever located on the front of the door near the touch pad access panel as well.  In the lower right hand corner of the door there is a white sticker affixed to the safe with the letter/number combination of MSW3517 AS719662.  The safe had been seized for evidentiary purposes on November 2, 2006 during the course of a armed bank robbery investigation and during the evidence packaging process was affixed with Middleton Police Property Tag number 21751.

certain things, to-wit:

Any and all firearms, U.S. currency, gambling/betting records.  Also, documents tending to identify the occupant in control of said premises, including but not limited to, utility bills, rent receipts, personal correspondence, photographs, keys, and telephone bills.

which things may constitute evidence of crimes, to-wit: Armed Robbery, committed in violation of Section(s) 943.32(2) of the Wisconsin Statutes and Felon in Possession of a Firearm, committed in violation of Section(s) 941.29(2) of the Wisconsin Statutes; and prayed that a Search Warrant be issued to search said premises or property within for the property aforesaid. That the facts tending to establish grounds for issuing a Search Warrant are as follows:

*1) FACTS

Your complainant is a Detective with the City of Middleton Police Department. Your complainant has been employed by the City of Middleton Police Department since 1999 and has been a law enforcement officer since 1998. Your complainant spent six months assigned to the Dane County Narcotics and Gang Task Force (Jan. 2006 –Jul 2006). Your complainant has been assigned to the detective bureau since 2004. Your complainant has experience investigating numerous armed robberies, including bank robberies. Your complainant has participated in the execution of numerous search warrants.

Your complainant was involved in the investigation of two cases of armed bank robberies at Bank Mutual, 6209 Century Avenue in the city of Middleton, County of Dane. The first armed robbery occurred on March 16, 2006 and is being investigated under Middleton Police Department case number 06-1460. The second robbery occurred April 14, 2006 and is being investigated under Middleton Police Department case number 06-2060. Your affiant reviewed the initial reports completed for both bank robberies.

Sergeant Barry Reynolds interviewed one witness, Erik Johnson, a teller at Bank Mutual under case number 06-1460. Sergeant Reynolds was advised by Johnson that the robbery suspect was a black male, in his mid-20's to 30 years of age, approximately 5'10" tall and weighing approximately 200 pounds. Officer Jerry Raffel interviewed another teller, Edie Shellhause, in the same incident and was told that the suspect was a black male, approximately 25-30 years old, approximately 5'10 tall and 180 to 200 pounds.

Officer Mark Walther interviewed a witness, Timothy Hoffman, the branch manager at Bank Mutual under case number 06-2060. Officer Walther was advised by Hoffman that the suspect in the second robbery was a black male, approximately 5'9" tall and approximately 192 pounds. Detective Craig Faga interviewed another witness, Jamie Beal, a teller at Bank Mutual in the same incident and was told that the suspect was a black male, approximately 25-30 years old, approximately 5'9" tall and approximately 180 pounds.

Lieutenant Chuck Foulke reported in case number 06-1460 that Dane County Sheriff's Office K-9 handler, Jay O'Neil's dog tracked the suspect's movement from Bank Mutual to an area around 2635 Amherst Road, before loosing the track.

Detective Faga interviewed Matthew Perenich, a witness who works at 2615 Amherst Road in Middleton, Wisconsin. Detective Faga was told by Perenich that he observed a black, middle to late 1990's model Ford Crown Victoria or Mercury Grand Marquis with

very shiny rims, described as "five-spoke-rims" parked in the 2600 block of Amherst Road in Middleton, Wisconsin during the time of both bank robberies. Further, Detective Faga learned from Perenich that he saw the car leaving the area, just prior to seeing police investigating the bank robbery on April 14, 2006. Detective Faga then informed other police departments in the area of the vehicle's description. Detective Faga later complied a sketch of the vehicle from witness description.

Detective Dave Haselow of the Middleton Police Department measured the distance from Bank Mutual to the 2600 block of Amherst Road and learned that the distance, going through a parking lot of Spring Tree Apartments is approximately 640 feet.

Madison Police Officer Lester Moore observed this sketch complied by Det. Faga. PO Moore later observed a black 1994 Mercury Grand Marquis with shiny rims and Wisconsin vehicle registration of 513-KHX on April 19, 2006 and conducted a stop of the vehicle. PO Moore advised your affiant that this vehicle was very similar to the one described by and drawn by Det. Faga. Officer Moore identified the driver of the car as Jarrett M. James, with a date of birth of 07-31-79, residing at 4009 Claire Street in Madison, Wisconsin.

Your complainant reviewed Dane County jail records for James. These records indicate that James' date of birth is 07-31-79 and that he is a black male, 5'10" tall and 180 pounds. Your affiant checked with a Wisconsin Department of Transportation records and verified that the registration of 513-KHX is registered Jarrett M. James, 4009 Claire Street, Madison, WI.

Your complainant checked with Wisconsin Department of Corrections and learned that Jarrett James is on probation and is a convicted felon. Further, your affiant met with Jarrett's Probation Agent, Sue Tomaszewski on May 4, 2006 and was advised that Jarrett reported to her earlier in the day that he reported recently paying all of the child support that he owed. Your affiant was also advised by Tomaszewski that she asked James about his vehicle's description and that Jarrett said that while he drove a black Grand Marquis, he denied having shiny rims, saying that his were black, instead. Further, Tomaszewski also reported that on March 13, 2006 James admitted to her that he gambles on the internet. Tomaszewski also reported to your affiant that on March 22, 2006 James had dropped off a money order for court obligation fees and supervision fees, paying for the whole year and that he was "trying to get his financial situation under control."

On August 4, 2006 your affiant met with Tomaszewski again. On this date Tomaszewski reported that on May 24, 2006 James' mother, Linda Martin called stating James was up north working and could not call Agent Tomaszewski.    On May 30, 2006 Agent Tomaszewski learned of an incident in downtown City of Madison where James was a suspect in a person waving a gun around (see paragraph below) and subsequently placed an apprehension request on James and notified via the phone of the apprehension request. Further, Tomaszewski reported that she contacted employer numbers given to her by James and learned that all were false. During the week of June 5th 2006 Tomaszewski received an envelope containing copies of two checks issued to James from alleged online gambling accounts along with a note from Martin apologizing for not getting the copies of the checks to Tomaszewski sooner. Also in the envelope was a letter written to Tomaszewski from James stating he was working in

northern WI and acknowledge the apprehension request. Tomaszewski also provided me a Madison Police Department report (Case No. 06-49975) from May 6, 2006. This report indicated that a black male was seen waving a gun around. Madison Police Officer Nicholas Eull observes a black male fitting the suspect's description driving a 2000 silver Lexus WI registration 342KSK. This suspect refused to stop for PO Eull. According to WI Department of Transportation this vehicle is registered to Jarrett M. James of 4009 Claire St. Madison, WI.

On October 24, 2006 your complainant met with Linda Martin. Martin confirmed that her son Jarrett James had resided with her during the times of the two bank robberies. Martin stated that James was currently incarcerated in Omaha, NE. Martin also indicated that she had seen a gun in her residence when James was resided with her. Martin also stated she knew James to gamble/bet via the internet.

Your complainant contacted Omaha, NE Police Department and learned that James had been arrested on May 16, 2006 by Douglas County Sheriff's Office (NE) and was still incarcerated. Your complainant later learned that James had been arrested for Possession of Marijuana With Intent To Deliver and Felon in Possession of a Firearm. This was confirmed by a fax from Douglas County SO (case number B01487).

On October 30, 2006 Martin left your complainant a voice message stating that she had received a letter from James (while incarcerated) indicating that there was a gun in a safe in Martin's residence. On November 2, 2006 your complainant met with Martin and her legal counsel Attorney Terry Frederick at Martin's residence. Your complainant was invited in and Martin showed me the safe located on the floor in a closet. Martin stated that this was where the gun was at however the safe was not hers and it belonged to James. Martin did provide me with the combination of 71533 for the safe. Martin did not object to police taking the safe out of her residence.

The safe was seized by police and taken back to the Middleton Police evidence room were it was assigned Inventory Tag number 21751.

Your complainant believes the information in the reports under Middleton Police Department case numbers 06-1460 and 06-2060 and the Madison Police Department case number 06-49975 and records from Douglas County Sheriff's Office case number B01487 to be truthful and reliable inasmuch as they are records kept during the course of regular business.

Your complainant believes the statements made by Linda Martin, Erik Johnson, Edie Shellhause, Timothy Hoffman, Jamie Beal, and Matthew Perenich to be truthful and reliable inasmuch as they are citizen informants and witnessed the events described.

Your complainant believes the information furnished by Lt. Charles Foulke, Sgt. Barry Reynolds, Detective Dave Haselow, Detective Craig Faga, Officer Mark Walther, Officer Lester Moore, and Sue Tomaszewski to be truthful and reliable inasmuch as it is information obtained during the course of their official duties.

Your complainant believes the records maintained by the Wisconsin Department of Transportation, the Dane County Sheriff's Department, and the Wisconsin Department

of Corrections to be truthful and reliable inasmuch as they are records kept during the normal course of business.

WHEREFORE, complainant prays that a Search Warrant be issued to search said premises and persons unknown within said premises, for the property aforesaid.

Det. Darrin J. Zimmerman

Subscribed and sworn to before me

this _3_ day of _November_, 20_06_

Judge of Circuit Court, Branch _3_

CIRCUIT COURT

2006 NOV -6  PM 2:54

DANE COUNTY, WI

CIRCUIT COURT )
) ss.
COUNTY OF DANE )

## RETURN OF OFFICER

Dated this _3_ day

of _November_, 2006

at _Dane County_

Wisconsin.

I hereby certify that by virtue of the within Warrant, I searched the within named premises and found the following:

- 1 – HS .22 caliber "snub nose" revolver handgun with 4 bullets
- .26 grams of cocaine base
- 1 Steve & Berry's plastic bag
- 1.466 ounces of cocaine base
- 3.74 grams of cocaine base
- Cloth bag w/ two plastic baggies
- 3.0 grams of cocaine base
- Social Security Card (Jarrett James) and car keys to one Lexus
- Miscellaneous items (Rolex, razor blade, Natrasorb, Excel Inn card)
- Cut out newspaper article
- Numerous receipts
- Numerous receipts and legal paperwork for Jarrett James
- Miscellaneous paperwork for Jarrett James and Jason Morgan

and have the same now in my possession subject to the disposition of the Court.

(Sheriff)    (Peace Officer)

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN
120 N. Henry Street, Rm. 540
Post Office Box 591
Madison, Wisconsin 53701

Chambers of
STEPHEN L. CROCKER
U.S. Magistrate Judge

Telephone
(608) 264-5153

May 30, 2008

Michael Lieberman
Federal Defender Services of Wisconsin, Inc.
222 West Washington Ave.
Suite 300
Madison, WI 53703

John William Vaudreuil
United States Attorney's Office
660 West Washington Avenue, #303
Madison, WI 53703

Re:   United States v. James
      Case No. 07-cr-163-bbc

Dear Counsel:

The attached Report and Recommendation has been filed with the court by the United States Magistrate Judge.

The court will delay consideration of the Report in order to give the parties an opportunity to comment on the magistrate judge's recommendations.

In accordance with the provisions set forth in the newly-updated memorandum of the Clerk of Court for this district which is also enclosed, objections to any portion of the report may be raised by either party on or before June 9, 2008, by filing a memorandum with the court with a copy to opposing counsel.

If no memorandum is received by June 9, 2008, the court will proceed to consider the magistrate judge's Report and Recommendation.

Sincerely,

Connie A. Korth

Connie A. Korth
Secretary to Magistrate Judge Crocker

Enclosures
cc:   Honorable Barbara B. Crabb, District Judge

MEMORANDUM REGARDING REPORTS AND RECOMMENDATIONS

Pursuant to 28 U.S.C. § 636(b), the district judges of this court have designated the full-time magistrate judge to submit to them proposed findings of fact and recommendations for disposition by the district judges of motions seeking:

(1) injunctive relief;

(2) judgment on the pleadings;

(3) summary judgment;

(4) to dismiss or quash an indictment or information;

(5) to suppress evidence in a criminal case;

(6) to dismiss or to permit maintenance of a class action;

(7) to dismiss for failure to state a claim upon which relief can be granted;

(8) to dismiss actions involuntarily; and

(9) applications for post-trial relief made by individuals convicted of criminal offenses.

Pursuant to § 636(b)(1)(B) and (C), the magistrate judge will conduct any necessary hearings and will file and serve a report and recommendation setting forth his proposed findings of fact and recommended disposition of each motion.

Any party may object to the magistrate judge's findings of fact and recommended disposition by filing and serving written objections not later than the date specified by the court in the report and recommendation. Any written objection must identify specifically all proposed findings of fact and all proposed conclusions of law to which the party objects and must set forth

with particularity the bases for these objections.  An objecting party shall serve and file a copy of the transcript of those portions of any evidentiary hearing relevant to the proposed findings or conclusions to which that party is objection.  Upon a party's showing of good cause, the district judge or magistrate judge may extend the deadline for filing and serving objections.

After the time to object has passed, the clerk of court shall transmit to the district judge the magistrate judge's report and recommendation along with any objections to it.

The district judge shall review de novo those portions of the report and recommendation to which a party objects.  The district judge, in his or her discretion, may review portions of the report and recommendation to which there is no objection.  The district judge may accept, reject or modify, in whole or in part, the magistrate judge's proposed findings and conclusions.  The district judge, in his or her discretion, may conduct a hearing, receive additional evidence, recall witnesses, recommit the matter to the magistrate judge, or make a determination based on the record developed before the magistrate judge.

**NOTE WELL: A party's failure to file timely, specific objections to the magistrate's proposed findings of fact and conclusions of law constitutes waiver of that party's right to appeal to the United States Court of Appeals.** *See United States v. Hall,* 462 F.3d 684, 688 (7th Cir. 2006).